UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
WESTERN DIVISION

| | |
|---|---|
| KINGDOM HOLDINGS, LLC d/b/a DR. DENT, Mark Durham Sr., an Individual | **CIV. NO. 5:23-5060-LLP** |
| Plaintiffs,<br><br>vs.<br><br>DEPUTY CHAZ FOSS, in his official and individual capacity, DEPUTY KAITLIN LEISING in her official and individual capacity, DEPUTY WILLIAM DAVIS, in his official and individual capacity, and DEPUTY JASON MITZEL, in his official and individual capacity,<br><br>Defendants. | **MEMORANDUM OPINION AND ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS** |

Defendants move to dismiss Plaintiffs' complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim and on qualified immunity grounds. (Doc. 11). For the following reasons, Defendants' Motion to Dismiss is granted in part and denied in part.

## BACKGROUND

Plaintiffs allege the following facts in support of their claims.

### A. Randall Vehicle

On September 19, 2020, Angela Randall signed a contract with Dr. Dent to repair her 2016 Cadillac Escalade. (Doc. 5, ¶ 12). The contract signed by Randell provided:

> As evidenced by my signature below, I hereby authorize Dr. Dent and the hail repair team to utilize its affiliates for repair of my vehicle once approved by my insurance . . . The undersigned hereby directs the insurance company to pay Dr. Dent directly.

(Doc. 5, ¶ 13). The contract allowed Dr. Dent to negotiate for repairs with State Farm on behalf of Randall. (Doc. 5, ¶ 14). Should negotiations be successful, Dr. Dent was then entitled to repair the vehicle and receive the insurance proceeds for the repair. (Doc. 5, ¶ 14). The contract did not allow any type of cancellation. (Doc. 5, ¶ 14).

On September 19, 2020, the vehicle was received at the Dr. Dent facility and stored indoors while Dr. Dent performed a damages estimate. (Doc. 5, ¶ 15). Dr. Dent estimated the repair to the vehicle to be $10,293,75. (Doc. 5, ¶ 16). On September 22, 2020, State Farm's claims department accepted Dr. Dent's estimate and contacted Randall asking her "who the check should be cut to." (Doc. 5, ¶ 16). Randall advised that she did not want the vehicle repaired until she saw the estimate. (Doc. 5, ¶ 16).

That day, Randall contacted Durham for the return for her vehicle. (Doc. 5, ¶ 17). Randall advised that she had spoken with her insurance company and that she had not authorized the repair. (Doc. 5, ¶ 17). Randall contacted the Pennington County Sheriff's Department claiming "something about Dr. Dent's repair estimate didn't add up." (Doc. 5, ¶ 17). The Sheriff's department responded to Dr. Dent's facility on Old Folsom Road. (Doc. 5, ¶ 17).

Deputies Foss and Leising arrived at Dr. Dent's facility and spoke with Dr. Dent's PDR technician Joseph Liefferman. (Doc. 5, ¶ 18). Liefferman retrieved Randalls' signed contract and handed it to Deputy Foss. (Doc. 5, ¶ 18). Deputy Foss read the contract aloud. (Doc. 5, ¶ 18). It is alleged that after reading the contract, Deputy Foss told Liefferman that "it sounds like the insurance has not approved this, which is why you guys haven't made a move on it," and that Liefferman responded "that's correct." (Doc. 5, ¶ 19). Deputy Foss contacted Randall's insurance company and was informed that State Farm had not approved the estimate. (Doc. 5, ¶ 20).

After speaking with the insurance company and learning that State Farm had not authorized repairs, Deputy Leising contacted Randall and told her she could come get her car. (Doc. 5, ¶ 21). Plaintiffs allege that Deputy Foss explained to Liefferman that State Farm was not paying for anything and that he must return the Randall vehicle. (Doc. 5, ¶ 22). It is alleged that Leising asked if Dr. Dent charges for storage fees on vehicles when performing estimates and that Liefferman stated that "there are storage fees on the estimate." (Doc. 5, ¶ 22).

When the deputies exited the facility, Liefferman locked the facility and closed the bay door. (Doc. 5, ¶ 23). Deputy Foss then advised Liefferman that he was being detained for "possible obstruction." (Doc. 5, ¶ 23). Pursuant to a search warrant, the deputies made forcible entry by kicking in the door. (Doc. 5, ¶ 23).

**B. Cole Vehicle**

On November 2, 2020, Phillip Cole signed the same authorization to repair form that Randall had signed. (Doc. 5, ¶ 21).  That same day, the vehicle was received at Dr. Dent's facility and stored indoors awaiting a damage estimate and approval by Cole's insurer Geico. (Doc. 5, ¶ 22).  Dr. Dent estimated the repair costs were $6,399.05. (Doc. 5, ¶ 23).  On November 5, 2020, a Geico representative inspected the vehicle and approved the estimate. (Doc. 5, ¶ 23).  Cole contacted Durham and demanded the vehicle be returned. (Doc. 5, ¶ 23).  Durham left a voicemail with Cole stating that "we don't store cars for free and we don't do repairs for free so you have a balance due of $475.00 plus another $20.00 for the ride to the [ ] car rental place.  So that's $495.00." (Doc. 5, ¶ 24).

Cole met Deputy Foss at the Folsum road facility on November 5, 2020. (Doc. 5, ¶ 25). Durham's voicemail was played in its entirety in front of Deputy Foss who, it is alleged, then said "try and trick him over here so we can get your vehicle out.  And if you get a hold of him don't tell him I'm here, just say you have his cash." (Doc. 5, ¶ 25).  When Durham did not answer Cole's phone call, Deputy Foss called Liefferman, Dr. Dent's repair technician. (Doc. 5, ¶ 26). During his conversation with Liefferman, Deputy Foss learned that while repairs had been approved by Geico, no repairs had yet been performed on the vehicle. (Doc. 5, ¶ 26).

Approximately 20 minutes later, Durham arrived at the facility, and showed Deputy Foss the authorization to repair form that Cole had signed. (Doc. 5, ¶ 27).  Durham told Deputy Foss and Cole that he would not return Cole's vehicle until he paid $495 in storage and estimating charges. (Doc. 5, ¶ 28).  Plaintiffs allege the following exchange between Deputy Foss and Durham:

> Foss: So Mark in South Dakota there is theft of a motor vehicle and that's what we went off last time . . . a judge in Pennington County signed that search warrant and allowed us to go in there.  Okay?
>
> Durham:  Nobody stole any vehicles.
>
> Foss:  I'm not saying you stole a vehicle . . . .
>
> Foss: . . . [T]heft of a motor vehicle includes depriving an owner of their vehicle.
>
> Durham:  You think I stole a car from somebody. . . .?
>
> Foss:  No, I'm not saying you stole anyone's car.

(Doc. 5, ¶ 29).

Supervisor Sergeant Davis arrived about ten minutes later to speak with Deputy Foss and Durham. Plaintiffs allege the following exchange between Sergeant Davis and Cole:

> Davis: Have you talked to your insurance agent this (sic)? Would they be willing to cover this?
>
> Cole: . . . I talked to them this morning and they said they won't . . . Its not that I'm trying to screw this guy. I'm doing what's best for me.
>
> Davis: He's [Durham] caught up (sic) on that you signed a contract and you did sign a contract . . . .
>
> Cole: Since when can a man not change his mind with a body shop? I've never heard of such a thing in my life . . . I told him I wanted an estimate!
>
> Davis: We're in a conundrum. If you don't pay it stays here and he's going to continue to charge fees . . . . I don't know if we have enough to move forward you know to try and o (sic) to get a judge to kick a door in. Now that he has a story you have different story. Is he depriving you of your property? Yes. But I think he does have some legal grounds . . . .
>
> Cole: I don't have $495 if I did I would just pay him . . . I work in Rapid City South Dakota . . . .
>
> Cole: (Points to Durham) Arrest him.
>
> Davis: I don't know there's a criminal offense here for wanting to charge you storage fees. It more (sic) better business bureau type thing.

(Doc. 5, ¶ 30).

Plaintiffs allege that after Deputy Foss spoke with his supervisor, he arrested Durham and that Sergeant Davis and Deputy Foss had the following exchange:

> Davis: So are we doing motor vehicle theft or you doing depriving someone of their property?
>
> Foss: Well I need speak (sic) with Elly
>
> Davis: And we're going figure (sic) out some charges real quick, I think you better look up the definitions of those things.
>
> Foss: I said 44-9 is the chapter.

(Doc. 5, ¶ 31).

## C. Indictments

4

On December 9, 2020, Durham was indicted for grand theft in violation of SDCL 22-30A-17 in both the Cole and Randall matters and warrants for arrest were issued that same day. (Docs. 5, ¶ 33, 38; 13-1, 13-2). Plaintiffs allege that on February 22, 2021, Durham "was made to get on the ground and then confined in the Pennington County jail." (Doc. 5, ¶ 34).

The Randall indictment was dismissed by the prosecutor on November 8, 2021, and the Cole indictment was dismissed by the prosecutor on April 5, 2022. (Docs. 5, ¶ 35; 13-1, 13-2).

## D. Federal Lawsuit

On September 28, 2023, Plaintiffs Kingdom Holdings, LLC d/b/a Dr. Dent, and Mark Durham Sr. sued Deputies Chaz Foss, Kaitlin Leising, William Davis, and Jason Mitzel with the Pennington County Sheriff's Office in their official and individual capacities for money damages under 42 U.S.C. § 1983. Plaintiffs allege two federal malicious prosecutions claims and a state law claim for intentional infliction of emotional distress.

Defendants have moved under Rule 12(b)(6) of the Federal Rules of Civil Procedure to dismiss Plaintiffs' section 1983 claims for failure to state a claim and on the basis of qualified immunity and ask that the Court decline to exercise supplemental jurisdiction over Plaintiffs' claim for intentional infliction of emotional distress.

## STANDARD OF REVIEW

### I.   Motion to Dismiss

Qualified immunity questions should be resolved at the earliest stage possible, but application of qualified immunity at the motion to dismiss stage requires the defense to be established on the face of the complaint. *Pearson v. Callahan*, 555 U.S. 223, 232 (2009); *Bradford v. Huckabee*, 394 F.3d 1012, 1015 (8th Cir. 2005)). "Unless the plaintiff's allegations state a claim of violation of clearly established law, a defendant pleading qualified immunity is entitled to dismissal before the commencement of discovery." *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985); *Ashcroft v. Iqbal*, 556 U.S. 662, 671 (2009) (explaining that qualified immunity is "both a defense to liability and a limited 'entitlement not to stand trial or face the other burdens of litigation' ").

The Court must accept Plaintiffs' allegations related to qualified immunity as true and view them in the light most favorable to Plaintiffs. *Baude v. Leyshock*, 23 F.4th 1065, 1069 (8th Cir.

2022).  The "face of the complaint" "includes public records and materials embraced by the complaint and materials attached to the complaint."  *See A.H. ex rel. Hubbard v. Midwest Bus Sales, Inc.*, 823 F.3d 448, 453 (8th Cir. 2016) (internal quotations and citation omitted).  However, the Court cannot contradict the allegations in the complaint by taking as true matters asserted in public records.  *High School Servicos Educacionais, Ltda. v. Choi*, Civ. No. 4:21-0029, 2022 WL 526000, at *5 (W.D. Mo. Feb. 22, 2022) (citing *LeMay v. Mays*, 18 F.4th 283, 289 (8th Cir. 2021)); *see also Miller v. Redwood Toxicology Lab'y, Inc.*, 688 F.3d 928, 931 (8th Cir. 2012) ("When considering . . . a motion to dismiss under Fed. R. Civ. P. 12(b)(6)[], the court generally must ignore materials outside the pleadings, but it may consider some materials that are part of the public record or do not contradict the complaint, as well as materials that are necessarily embraced by the pleadings.").

## DISCUSSION

Plaintiffs allege two federal claims for malicious prosecution against defendant police officers arising out of the Cole and Randall incidents.  In both the Randall and Cole matters, arrest warrants for Durham were issued on December 9, 2020, subsequent to Durham's indictment on charges of grand theft.  (Docs. 13-1; 13-2).  Plaintiffs allege that on February 22, 2021, Durham was arrested at gunpoint on these charges and confined to the Pennington County jail.  (Doc. 5, ¶ 34).  The Randall indictment was dismissed by the prosecutor on November 8, 2021, and the Cole indictment was dismissed by the prosecutor on April 5, 2022.  (Docs. 5, ¶ 35; 13-1, 13-2).

" 'A malicious prosecution claim under § 1983,' like a false arrest claim, 'is properly understood as a Fourth Amendment claim for unreasonable seizure.' " *English v. Clarke*, 90 F.4th 636, 647 (4th Cir. 2024) (citation omitted).  The difference is that malicious prosecution covers unconstitutional seizures supported by legal process such as "arrests[s] made pursuant to a warrant" and detentions during "the period after legal process issued—e.g., post-indictment or arraignment." *Id.* (quoting *Humbert v. Mayor & City Council of Baltimore City*, 866 F.3d 546, 555 (4th Cir. 2017); *see also Williams v. Aguirre*, 965 F.3d 1147, 1158 (11th Cir. 2020) (stating that malicious prosecution requires a seizure "pursuant to legal process.").  A Fourth Amendment violation involving these seizures occurs "when legal process itself goes wrong—when, for example, a judge's probable-cause determination is predicated solely on a police officer's false statements" or material omissions made with reckless disregard for the truth.  *See Williams*, 965

F.3d at 1158 (quoting *Manuel v. City of Joliet, Ill.*, 580 U.S. 357, 367 (2017)); *Howe v. Gilpin*, 65 F.4th 975, 979-80 (8th Cir. 2023) (stating that "a warrant based upon an affidavit containing 'deliberate falsehood' or 'reckless disregard for the truth' violates the Fourth Amendment;" reckless disregard may be inferred from the omission of information if it would be "clearly critical to the finding of probable cause."). In these situations, "[l]egal process has gone forward, but it has done nothing to satisfy the Fourth Amendment's probable-cause requirement." *Williams*, 965 F.3d at 1158 (quoting *Manuel*, 580 U.S. at 367).

To succeed on a Fourth Amendment claim for malicious prosecution under section 1983, a plaintiff must prove: (1) the elements of the common law tort of malicious prosecution, and (2) a violation of [his] Fourth Amendment right to be free of unreasonable seizures. *Peaz v. Mulvey*, 915 F.3d 1276, 1285 (11th Cir. 2019); *see also Thompson v. Clark*, 596 U.S. 36, 42, 43 n.2 (2022). The elements of a malicious prosecution tort are: (1) the criminal proceeding was instituted without any probable cause, (2) the defendant's motive in instituting the suit was malicious[1], (3) the prosecution terminated in the acquittal or discharge of the accused. *Thompson*, 596 U.S. at 44; *see Klein v. Steinkamp*, 44 F.4th 1111, 1115 (8th Cir. 2022). A claim for malicious prosecution is actionable under the Fourth Amendment to the extent that the defendant's actions cause the plaintiff to be seized without probable cause. *See Thompson*, 596 U.S. at 43 n.2 ("Because this claim is housed in the Fourth Amendment, the plaintiff also has to prove that the malicious prosecution resulted in the seizure of the plaintiff.").

## I.   Official Capacity Claims

Plaintiffs allege two federal malicious prosecution claims for money damages against Defendants in their official capacities arising from the Cole and Randall vehicle incidents. (Doc. 5). It is alleged that Defendants were employees of Pennington County at the time of the incidents in question. (Doc. 5).

Defendants have moved to dismiss Plaintiffs' official capacity claims under Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state section 1983 claims against a

---

[1] Historically, American courts have defined "malice" in this context as "without probable cause and for a purpose other than bringing the defendant to justice." *Thompson v. Clark*, 596 U.S. 36, 44 (2022). The Supreme Court has not decided, however, whether the plaintiff "must establish malice (or some other *mens rea*) in addition to the absence of probable cause." *Id.* at 44 n.3.

municipality under *Monell v. New York City Dep't of Social Servs.*, 436 U.S. 658 (1978). (Doc. 12 at 45). Plaintiffs have not objected to the dismissal of their official capacity claims. (Doc. 14-1).

It is a fundamental principle of section 1983 litigation that a "suit against a public official in his official capacity is actually a suit against the entity for which the official is an agent." *Elder-Keep v. Aksamit*, 460 F.3d 979, 986 (8th Cir. 2006). "A plaintiff who sues public employees in their official . . . capacities sues only the public employer and therefore must establish the municipality's liability for the alleged conduct." *Kelly v. City of Omaha, Neb.*, 813 F.3d 1070, 1075 (8th Cir. 2016). However, municipalities, such as Pennington County in this case, "cannot be held liable [under section 1983] *solely* because it employs a tortfeasor—or, in other words, a municipality cannot be held liable under § 1983 on a respondeat superior theory." *See Monell*, 436 U.S. at 691. Municipalities may not be held liable under section 1983 unless "a municipal policy or custom, either official or unofficial, was the moving force behind a constitutional violation." *Marti v. City of Maplewood, Mo.*, 57 F.3d 680, 684 (8th Cir. 1995).

Plaintiffs have not alleged in their Amended Complaint that a custom or policy of Pennington County was the moving force behind any Constitutional violation in this case. Accordingly, they have failed to state any official capacity claims against Defendants under § 1983.

## II.    Individual Capacity Claims

Plaintiffs also alleged malicious prosecution claims against Defendants in their individual capacities.

### A. Do the indictments conclusively establish probable cause for the arrest and prosecution of Durham?

Defendants have also moved to dismiss the claims alleged against them in their individual capacities, arguing that based on the allegations in the amended complaint, Defendants are entitled to qualified immunity because Plaintiffs have failed to make out a violation of Durham's Fourth Amendment right to be free from unreasonable seizure. (Doc. 12 at 49). Defendants argue that the indictments returned by a grand jury in both the Randall and Cole matters conclusively determines that the criminal proceedings against Durham were instituted with probable cause. (Doc. 12 at 49). In support of their argument, Defendants quote the United States Supreme Court's decision in *Gerstein v. Pugh*, which states that "an indictment, fair upon its face, returned by a

properly constituted grand jury, conclusively determines the existence of probable cause" and requires issuance of an arrest warrant without further inquiry. 420 U.S. 103, 117 n.19 (1975) (citing *Ex parte United States*, 287 U.S. 241, 250 (1932)).

Plaintiffs argue that this case precedent is no longer controlling and argue that the presumption of probable cause created by a grand jury indictment is rebuttable "where (1) a law-enforcement officer, in the course of setting a prosecution in motion, either knowingly or recklessly makes false statements (such as in affidavits or investigative reports) or falsifies or fabricates evidence; (2) the false statements and evidence, together with any concomitant misleading omissions, are material to the ultimate prosecution of the plaintiff; and (3) the false statements, evidence, and omissions do not consist solely of grand-jury testimony or preparation for that testimony." (Doc. 14-1 at 64-65) (citing *Sanders v. Jones*, 728 Fed. Appx. 563 (6th Cir. Apr. 4, 2018)). Plaintiffs argue that the indictments in the Randall and Cole matters were not conclusive evidence of probable cause because they allege that Deputy Foss deliberately withheld from prosecutors the fact that Cole signed Dr. Dent's authorization to repair contract and that Cole's insurer had approved Dr. Dent to make repairs to the vehicle. (Doc. 5 at 26).

The Eighth Circuit Court of Appeals has not directly addressed whether, as argued by Defendants, an indictment is conclusive evidence in a federal malicious prosecution claim that there was probable cause to seize defendant pursuant to legal process. Other courts that have examined this issue have held that while an indictment is *prima facie* evidence of probable cause in a federal claim for malicious prosecution, such presumption may be rebutted by showing that a defendant officer's false statements, fabricated evidence, or material omissions resulted in the commencement or continuation of a criminal proceeding. *See, e.g., Xi v. Haugen*, 68 F.4th 824, 841 (3d Cir. 2023) (stating that the presumption of probable cause created by the indictment may be rebutted by a plausible allegation that the indictment was "procured by fraud, perjury or other corrupt means," or that the officer "knowing and deliberately or with reckless disregard for the truth, made [materially] false statements or omissions" in the warrant application); *King v. Harwood*, 852 F.3d 568, 587-88 (6th Cir. 2017) (stating that the presumption that the grand-jury indictment is evidence of probable cause is rebuttable and not conclusive); *Awabdy v. City of Adelanto*, 368 F.3d 1062, 1067 (9th Cir. 2004) (stating that the indictment constitutes *prima facie* evidence of probable cause and may be rebutted "by showing that the criminal prosecution was

induced by fraud, corruption, perjury, fabricated evidence, or other wrongful conduct undertaken in bad faith."); *White v. Frank*, 855 F.2d 956, 961 (2d Cir. 1988) (stating "though an indictment by a grand jury is generally considered *prima facie* evidence of probable cause in a subsequent civil action for malicious prosecution, this presumption may be rebutted by proof that the defendant misrepresented, withheld, or falsified evidence."); *Merritt v. Arizona*, 425 F.Supp.3d 1201, 1217-19 (D. Ariz. 2019) (citing to Restatement Second of Torts § 664, the court held that plaintiff failed to show that defendants falsified the evidence used to obtain the indictment or otherwise acted with malice or bad faith and thus failed to refute the presumption of probable cause created by the indictment); *United States v. C.L.T.*, 207 F.Supp.3d 1054, 1056 (D.S.D. Sept., 9, 2016) (stating that an indictment is *prima facie* evidence of the defendant's adult status and citing cases with approval which held that an indictment is *prima facie* evidence of the existence of probable cause); *Hassan v. Weyker*, Civ. No. 16-1911, 2017 WL 3425687, at *5 (D. Minn. Aug. 9, 2017) (stating that the grand jury's indictment conclusively determines the existence of probable cause absent any plausible allegations that the indictments were tainted by fabrication of evidence).

It appears that the Eighth Circuit would adopt a similar view as these other jurisdictions and would hold that an indictment, while not conclusive, is *prima facie* evidence of probable cause that may be rebutted by showing that a defendant officer's false statements, fabricated evidence, or material omissions resulted in the commencement or continuation of a criminal proceeding. *C.f. Arnott v. Mataya*, 995 F.2d 121, 124 n.4 (8th Cir. 1993) (rejecting the defendants' argument that the grand jury's indictment of plaintiff insulates them from § 1983 liability for false arrest because it would eliminate all § 1983 lawsuits for false arrest, contrary to congressional intent); *Ames v. United States*, 600 F.2d 183, 185 (8th Cir. 1979) ("[A]bsent any specific allegation, such as the presentation of false evidence for the withholding of evidence, the grand jury indictment breaks any chain of causation linking the employees' activities to the institution of criminal proceedings, thus insulting the F.B.I and Justice Department employees from tort liability.").

### B. Do Plaintiffs' allege facts rebutting the presumption of probable cause created by the indictments?

In order to rebut the presumption of probable cause created by the indictments preceding the arrest of Durham, Plaintiffs must allege plausible allegations that Durham was indicted and prosecuted without probable cause as a result of Deputy Foss's false statements or material omissions, that such prosecution resulted in his arrest, and that such prosecution terminated in his

10

acquittal or discharge. *See Thompson v. Clark*, 596 U.S. 36, 44, 43 n.2 (2022) (stating that because a claim for malicious prosecution "is housed in the Fourth Amendment, the plaintiff also has to prove that the malicious prosecution resulted in a seizure of the plaintiff."); *Howe v. Gilpin*, 65 F.4th 975, 979-80 (8th Cir. 2023) (stating that "a warrant based upon an affidavit containing 'deliberate falsehood' or 'reckless disregard of the truth' violates the Fourth Amendment;" reckless disregard may be inferred from the omission of information if it would be "clearly critical to the finding of probable cause."); *King v. Harwood*, 852 F.3d 568, 591 (6th Cir. 2017) (holding that plaintiff had stated a section 1983 malicious prosecution claim because the plaintiff alleged that the officer set her prosecution in motion by seeking warrants despite the absence of probable cause *and* making knowing or reckless false statements implicating the plaintiff in his investigative report). That being said, Plaintiffs cannot use grand jury testimony or related "preparatory activity, such as a preliminary discussion in which an officer related the substance of his intended testimony," to rebut probable cause.[2] *See Rehberg v. Paulk*, 566 U.S. 356, 370 (2012). In *Rehberg v. Paulk*, the Supreme Court made clear that absolute immunity is to be afforded to *all* grand jury witnesses, even law enforcement officers who may have "conspired to present false testimony." 566 U.S. at 369.

In the present case, Plaintiffs have made no allegations with regard to the Randall matter that officers made any false or misleading statements that would render the indictment and prosecution in the Randall case legally infirm. Rather, Plaintiffs simply ask the Court to second-guess the grand jury's finding of probable cause in the Randall matter, arguing that no probable cause existed to indict and prosecute Durham for grand theft because under SDCL § 44-11, "Dr. Dent and Durham [were entitled] to a mechanic's lien on the Randall vehicle" and "Durham was entitled by state law to hold the vehicle until payment of storage." (Doc. 5, ¶¶ 40, 41). This the Court may not do. *See Kaley v. United States*, 571 U.S. 320, 328 (2014) ("The grand jury gets to

---

[2] It is not entirely clear to what extent Plaintiffs base their malicious prosecution claims on conduct that occurred during grand jury proceedings. In their Amended Complaint, Plaintiffs allege that Deputy Foss "deliberately withheld from prosecutors the fact that Cole had signed Dr. Dent's authorization to repair contract and that Geico had approved Dr. Dent to make repairs to the vehicle" and that these omissions occurred on December 9, 2020, the day Durham was indicted for grand theft. (Docs. 5, ¶ 33; 13-1). In their brief, Plaintiffs argue that this information was not "given to the grand jury on December 9 or to the prosecution during grand jury testimony.") (Doc. 14-1 at 66). While witnesses have absolute immunity from any federal malicious prosecution claim based on their grand jury testimony, the Court need not address any absolute immunity defense because it was not raised by Defendants in their brief. *See McCuen v. Polk County, Iowa*, 893 F.2d 172, 174 (8th Cir. 1990) (characterizing absolute immunity as an affirmative defense).

say—without any review, oversight, or second-guessing—whether probable cause exists to think that a person committed a crime."); *Harris v. Tioga Cnty.*, 663 F.Supp.3d 212, 237-38 (N.D.N.Y. 2023) ("A claim for malicious prosecution against a police officer 'requires some showing that the defendant distorted the process by which [the] plaintiff was brought to trial.' "). Without any allegations that Durham's prosecution in the Randall matter was caused by false statements or omissions clearly critical to the finding of probable cause, the indictment is conclusive evidence of probable cause. *See Hassan v. Weyker*, Civ. No. 16-1911, 2017 WL 3425687, at *5 (D. Minn. Aug. 9, 2017) (stating that the grand jury's indictment conclusively determines the existence of probable cause absent any plausible allegations that the indictments were tainted by fabrication of evidence). *C.f. Estate of Nash v. Folsom*, 92 F.4th 746, 754 (8th Cir. 2024) ("Recklessness . . . may be inferred from the fact of omission of information from an affidavit when the material omitted would have been *clearly critical* to the finding of probable cause."). It is important to note too that Plaintiffs allege that Randall's insurance company indicated to Deputy Foss that it had not authorized any repairs. (Doc. 5, ¶ 20). Plaintiffs allege that under the authorization to repair contract, Dr. Dent was authorized to repair Randall's vehicle only when it received approval from the insurance company. Because Plaintiffs have failed to allege facts rebutting probable cause to arrest created by the indictments in the Randall matter, the Court will dismiss Plaintiffs' malicious prosecution claim arising from the Randall matter.

In contrast to the Randall matter, it is alleged that in the Cole matter, Deputy Foss "deliberately withheld from prosecutors the fact that Cole signed the authorization to repair contract and that [the insurance company] had approved Dr. Dent to make repairs to the vehicle." (Doc. 5, ¶ 33). Plaintiffs allege that "based on the misleading and outright false statements by Deputy Foss, Durham was charged with Grand Theft in the Cole transaction." (Doc. 5, ¶ 34). Durham was indicted for grand theft on December 9, 2020, and a warrant for his arrest was issued that same day. (Doc. 13-1 at 58; 5, ¶¶ 33-36). Durham alleges that on February 22, 2021, he "was at gun point" and "made to get on the ground and then confined in the Pennington County jail." (Doc. 5, ¶ 36). The Cole indictment was dismissed by the prosecutor on April 5, 2022. (Docs. 5, ¶ 35; 13-1, 13-2).

### C. Are Defendants entitled to qualified immunity based on the allegations in the complaint?

Plaintiffs have sufficiently alleged facts rebutting the *prima facie* inference of probable cause created by the indictment in the Cole matter and the Court must examine whether, based on the allegations in the amended complaint, Defendants are entitled to qualified immunity.

"The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violated clearly established statutory or constitutional rights of which a reasonable person would have known.' " *Greenman v. Jessen*, 787 F.3d 882, 887 (8th Cir. 2015) (quoting *Pearson v. Callahan*, 555 U.S. 223, 231 (2009)). "Qualified immunity balances two important interests—the need to hold public officials accountable when they exercise power irresponsibly, and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson*, 555 U.S. at 231. It gives officials breathing room to make reasonable but mistaken judgments about open legal questions and protects all but the plainly incompetent or those who knowingly violate the law. *Parker v. Chard*, 777 F.3d 977, 979-80 (8th Cir. 2015); *see also Herts v. Smith*, 345 F.3d 581, 585 (8th Cir. 2003) (stating that the issue is not "whether the defendant acted wrongly, but whether reasonable persons would know they acted in a manner which deprived another of a known constitutional right.").

To overcome a claim of qualified immunity, a plaintiff must establish that (1) the facts alleged in the complaint make out a constitutional violation and (2) that the right was clearly established at the time of the deprivation. *Hamner v. Burls*, 937 F.3d 1171, 1176-77 (8th Cir. 2019) (citing *Pearson*, 555 U.S. at 232); *Jones v. McNeese*, 675 F.3d 1158, 1161 (8th Cir. 2012). Government officials are entitled to qualified immunity unless both of these questions are answered affirmatively. *Greenman*, 787 F.3d at 887. A court is "permitted to exercise [its] sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first." *Id.* (quoting *Pearson*, 555 U.S. at 236).

Whether an official protected by qualified immunity may be held personally liable for an allegedly unlawful official action turns on the objective legal reasonableness of the action, assessed in light of the facts available to the officer at the time of the alleged constitutional violation and the legal rules that were clearly established at the time it was taken. *See Saterdalen v. Spencer*, 725 F.3d 838, 841 (8th Cir. 2013). "For a right to be 'clearly established,' the law must have been sufficiently clear, at the time of the official's conduct, to put every reasonable official on notice that what he was doing violated that right." *Hamner*, 937 F.3d at 1177 (quoting *Ashcroft v. al-*

13

*Kidd*, 563 U.S. 731, 741 (2011)).  "A plaintiff need not cite a case directly on point, but controlling authority or a robust consensus of cases of persuasive authority must have put the statutory or constitutional question beyond debate as of the date of the alleged violation."  *Id.* (internal quotations and citation omitted).

### 1. Was it clearly established at the time of the alleged conduct that Defendants' alleged conduct constituted a violation of Durham's Fourth Amendment right to be free from unreasonable seizure?

This Court held oral argument telephonically on Defendants' Motion to Dismiss on August 28, 2024.  (Doc. 24).  In its Order Requesting Oral Argument, the Court asked the parties to address whether it was "clearly established" under Eighth Circuit law at the time of the alleged conduct, that a claim for malicious prosecution was actionable under the Fourth Amendment.  (Doc. 20). After listening to oral argument on this issue and after further consideration, the Court concludes that it was.

Under Eighth Circuit law at the time of the alleged conduct,[3] "a malicious prosecution claim was only cognizable under § 1983 if the 'alleged wrongful conduct . . . also infringe[d] some provision of the Constitution or federal law.' " *Dunn v. Does 1-22*, Civ. Nos. 23-2220, 23-2268, 23-2304, 2024 WL 4050338, at \*7 (8th Cir. 2024) (citing *Martin v. Julian*, 18 F.4th 580, 585 (8th Cir. 2021)).  The question before the Court, then, is whether it was clearly established at the time of the alleged conduct that causing a legal proceeding to be instituted against an individual without probable cause and with malice, resulting in the seizure of that individual, constituted a violation of the individual's Fourth Amendment rights.

On April 4, 2022, a day before the charges were dismissed against Durham in the Cole matter, the Supreme Court issued its decision in *Thompson v. Clark*, 596 U.S. 36 (2022).  In that case, the plaintiff sued several police officers under § 1983, alleging that he was "maliciously prosecuted" without probable cause and that he was seized as a result.  *Id.* at 42.  The Supreme Court in *Thompson* noted that section 1983 malicious prosecution claims had, up until that point, been recognized by District Courts and Courts of Appeals in numerous cases.  *Id.* (citing *Pitt v.*

---

[3] The Cole incident took place on November 5, 2020.  (Doc. 13-1).  Durham was indicted for grand theft on the Cole incident on December 9, 2020, and the criminal case against him was dismissed on April 5, 2022.  (Doc. 13-1).  A malicious prosecution claim accrues with the "termination of the proceeding in favor of the accused." *See Martin v. Julian*, 18 F.4th 580, 584 (8th Cir. 2021) (quoting *Manuel v. City of Joliet, Ill.*, 580 U.S. 357, 371 (2017)).

*District of Columbia*, 491 F.3d 494, 510-11 (D.C. 2007) ("[N]early every other Circuit has held that malicious prosecution is actionable under the Fourth Amendment to the extent that the defendant's actions cause the plaintiff to be 'seized' without probable cause.")); *Kossler v. Crisanti*, 564 F.3d 181, 186-87 (3d Cir. 2009); *Sykes v. Anderson*, 625 F.3d 294, 308-09 (6th Cir. 2010); *Durham v. Horner*, 690 F.3d 183, 188 (4th Cir. 2012); *Myers v. Koopman*, 738 F.3d 1190, 1194 (10th Cir. 2013); *Winfrey v. Rogers*, 901 F.3d 483, 491-93 (5th Cir. 2018); *Lanning v. Glen Falls*, 908 F.3d 19, 28 (2d Cir. 2018); *Jordan v. Waldoboro*, 943 F.3d 532, 545 (1st Cir. 2019); *Williams v. Aguirre*, 965 F.3d 1147, 1157 (11th Cir. 2020)). The *Thompson* Court also stated that its precedents recognize such a claim. *Id.* (citing *Manuel v. City of Joliet, Ill.*, 580 U.S. 357 (2017)).

One such precedent was the Supreme Court's 2017 decision in *Manuel v. City of Joliet, Ill.*, 580 U.S. 357 (2017). Therein, the plaintiff was arrested for unlawful possession of a controlled substance despite the substance testing negative for a controlled substance in a field-test and laboratory test. Despite the negative test results, the evidence technician lied in his report, claiming that one of the pills was "found to be . . . positive for the probable presence of ecstasy." *Id.* at 361. Similarly, one of the arresting officers wrote in his report that "[f]rom [his] training and experience, [he] knew the pills to be ecstasy." *Id.* On the basis of those statements, another officer swore out a criminal complaint against the plaintiff, charging him with unlawful possession of a controlled substance. *Id.* The plaintiff was brought before a county court judge later that day for a determination of whether there was probable cause for the charge, as necessary for further detention. *Id.* The judge relied exclusively on the criminal complaint—which in turn relied exclusively on the police department's fabrications—to support a finding of probable cause. *Id.* Based on that determination, the judge sent the plaintiff to the county jail to await trial. *Id.*

The Seventh Circuit in *Manuel* affirmed the district court's decision dismissing the plaintiff's challenge to his pretrial detention following legal process on the basis that such conduct was not cognizable under the Fourth Amendment. *Id.* The Supreme Court reversed the Seventh Circuit's decision. In doing so, the Court stated:

> The Fourth Amendment prohibits government officials from detaining a person in the absence of probable cause. That can happen when the police hold someone without any reason before the formal onset of a criminal proceeding. But it also can occur when legal process itself goes wrong—when, for example, a judge's probable-cause determination is predicated solely on a police officer's false statements. Then, too, a person is confined without constitutionally adequate

15

> justification. Legal process has gone forward, but it has done nothing to satisfy the
> Fourth amendment's probable-cause requirement.

*Id.* at 367. The Court found that no evidence of the plaintiff's criminality had come to light in between the roadside arrest and the County Court proceeding initiating legal process and that all the judge had before him were police fabrications about the pills' content. *Id.* at 369. The Court held that the judge's order holding the plaintiff for trial therefore lacked any proper basis and violated his Fourth Amendment rights. *Id.* ("Legal process did not expunge Manuel's Fourth Amendment claim because the process he received failed to establish what that Amendment makes essential for pretrial detention—probable cause to believe he committed a crime."). The Court stated that "[i]f the complaint is that a form of legal process resulted in pretrial detention unsupported by probable cause, then the right allegedly infringed lies in the Fourth Amendment." *Id.*

In their amended complaint, Plaintiffs allege that Deputy Foss's deliberate withholding from prosecutors that Cole signed the authorization to repair contract and that Cole's insurance company approved the repairs, caused plaintiff to be indicted and seized in violation of his Fourth Amendment rights. (Doc. 5, ¶ 34) ("Based on the misleading and outright false statements by Deputy Foss, Durham was charged with Grand Theft in the Cole transaction. Durham was at gun point on February 22, 2021, made to get on the ground and then confined in the Pennington County jail."). At the time of this alleged conduct, it was clearly established in the Eighth Circuit that a claim of malicious prosecution was cognizable under § 1983 if the wrongful conduct also infringed some provision of the Constitution or federal law. *Martin v. Julian*, 18 F.4th 580, 584 (8th Cir. 2021) (citing *Joseph v. Allen*, 712 F.3d 1222, 1228 (8th Cir. 2013)). It was also clearly established under the Supreme Court's precedent in *Manuel v. City of Joliet*, that an individual's Fourth Amendment rights are violated if, as alleged by Plaintiffs, the individual is unreasonably seized pursuant to legal process as a result of an officer's false or misleading statements. Based on these precedents, the Court finds that Plaintiffs have stated a claim under § 1983 for the violation of a clearly established Fourth Amendment right.

### 2. Qualified immunity - Did probable cause or arguable probable cause exist to arrest and prosecute Durham?

Defendants argue that, even excluding evidence of the indictment, they had probable cause to arrest and prosecute Durham based on the allegations in the complaint. (Doc. 12 at 49). As

stated above, the seizure of an individual pursuant to legal process is consistent with the Fourth Amendment if it is supported by probable cause. *See Amrine v. Brooks*, 522 F.3d 823, 832 (8th Cir. 2008). "Probable cause exists when the totality of the circumstances known to the officer at the time of the arrest 'are sufficient to lead a reasonable person to believe that the defendant has committed or is committing an offense.' " *Brown v. City of St. Louis, Mo.*, 40 F.4th 895, 900 (8th Cir. 2022); *Kaley v. United States*, 571 U.S. 320, 338 (2014) ("Probable cause . . . is not a high bar: It requires only the kind of fair probability on which reasonable and prudent people, not legal technicians act."). Considerations of actual probable cause are assigned to the constitutional violation prong analysis. *Brown*, 40 F.4th at 901.

Plaintiffs also argue that they are entitled to qualified immunity because there was arguable probable cause to arrest and prosecute Durham based on allegations in the complaint. (Doc. 12 at 50). "The issue of arguable probable cause is properly part of the solution of qualified immunity's second prong, the clearly established prong." *Id.* Arguable probable cause exists where "an officer mistakenly arrests a suspect believing it is based on probable cause if the mistake is objectively reasonable." *Borgman v. Kedley*, 646 F.3d 518, 523 (8th Cir. 2011). Thus, "even if an officer arrests [or initiates or continues prosecution of] an individual without actual probable cause—in violation of the Constitution—he has not violated that individual's 'clearly established' rights for qualified immunity purposes if he nevertheless had *arguable* probable cause to make the arrest" or to initiate, or continue the prosecution. *See Brown*, 40 F.4th at 901; *see also Schaffer v. Beringer*, 842 F.3d 585, 592 (8th Cir. 2016) ("[T]he issue for immunity purposes is not probable cause in fact but arguable probable cause, that is, whether the officer should have known that the arrest violated plaintiff's clearly established right."). "Under this 'objective legal reasonableness standard,' courts may not delve into the officers' subjective motivation for their actions." *Hosea v. City of St. Paul*, 867 F.3d 949, 955 (8th Cir. 2017) (quoting *Joseph v. Allen*, 712 F.3d 1222, 1226 (8th Cir. 2013)).

A court may dismiss a complaint on qualified immunity grounds if, accepting as true the allegations in plaintiff's complaint and construing all inferences in plaintiff's favor, the defendant had probable cause or arguable probable cause to arrest and prosecute the plaintiffs. *See, e.g., Baude v. Leyshock*, 23 F.4th 1065, 1072-73 (8th Cir. 2022) (examining whether the allegations taken as true and viewed in the light most favorable to plaintiff established arguable probable cause

for the arrests, thus entitling the officers to qualified immunity); *Greenman v. Jessen*, 787 F.3d 882, 889 (8th Cir. 2015) (affirming the district court order granting motion to dismiss, in part, on the basis that the officer had "at a minimum," arguable probable cause to conclude that the plaintiff had violated a state motor vehicle law); *Gibson v. Hadzic*, Civ. No. 4:22-0163, 2023 WL 8697785, at *2 (E.D. Mo. Dec. 15, 2023) (holding in an order denying a motion for reconsideration that the court's dismissal of the complaint was proper because the officers had probable cause, or arguable probable cause, to arrest the plaintiff); *Liedtke v. Runningen*, Civ. No. 4:22-00163, 2016 WL 11491381, at *16 (D. Minn. Jun. 20, 2016) (holding that the facts in the complaint are "sufficient on their face to show Smith had arguable probable cause to seize Plaintiff.").

In the present case, Defendants will be entitled to qualified immunity if the allegations, taken as true and in the light most favorable to Plaintiffs, (a) Defendants had probable cause to initiate the prosecution of Durham for grand theft under the constitutional prong of the qualified immunity analysis; or 2) Defendants reasonably, but mistakenly, concluded that probable cause was present to initiate the prosecution of Durham for that crime under the clearly established prong of the qualified immunity analysis.

"[B]ecause the totality of circumstances determines the existence of probable cause, evidence that tends to negate the possibility that a suspect has committed a crime is relevant to whether the officer has probable cause." *Kuehl v. Burtis*, 173 F.3d 646, 650 (8th Cir. 1999). "An officer contemplating an arrest is not free to disregard plainly exculpatory evidence, even if substantial inculpatory evidence (standing by itself) suggests that probable cause exists." *Id.*[4]

In *Kuehl v. Burtis*, 173 F.3d 646 (8th Cir. 1999), the plaintiff sued an arresting police officer under § 1983 for arresting her without probable cause. *Id.* at 648-49. The plaintiff was arrested for simple assault after an altercation in the store with a customer. *Id.* On appeal, the South Dakota Supreme Court noted that South Dakota law defines simple assault as: "attempting to cause bodily injury to another . . . with the actual ability to cause the injury" as well as "intentionally causing

---

[4] That being said, exculpatory evidence need not be presented during grand jury proceedings. *See United States v. Darden*, 688 F.3d 382, 387 (8th Cir. 2012) (quoting *United States v. Williams*, 504 U.S. 36, 51 (1992) ("The government is not obligated to present exculpatory evidence in grand jury proceedings, . . . since 'the grand jury sits not to determine guilt or innocence, but to assess whether there is adequate basis for bringing a criminal charge[.]' ") ; *Lien v. Class*, 574 N.W.2d 601, 613 (S.D. 1998) ("[T]he grand jury need only hear the prosecution's side of an investigation and need not be presented with exculpatory evidence in the possession of the prosecutor.").

bodily injury to another which does not result in serious bodily injury." *Id.* at 649 (cleaned up). The court concluded that the police officer was not entitled to qualified immunity because he ignored exculpatory evidence known to him that negated the intent required for simple assault. *Id.* at 651 ("Evidence known to [the officer] therefore suggested that [the plaintiff] neither 'attempt[ed] to cause bodily injury' nor 'intentionally caus[ed] bodily injury.' ").

Turning to the statute for which Durham was arrested and prosecuted in the present case, SDCL § 22-30A-1, defines theft as "[a]ny person who takes, or exercises unauthorized control over, property of another, with intent to deprive that person of the property." "Deprive" is defined as "to take or withhold property of another or to dispose of property of another so as to make it unlikely that the owner will receive it." *South Dakota v. DeWall*, 343 N.W.2d 790, 792 (S.D. 1984) (quoting SDCL § 22-1-2(11)). A class four "grand theft" felony, for which Durham was indicted in the Cole matter, is committed if the property stolen "is more than five thousand dollars but less than or equal to one hundred thousand dollars." SDCL § 22-30A-17.

Theft is a specific intent crime in South Dakota. *See State v. West*, 344 N.W.2d 502, 503-04 (S.D. 1984); *State v. Blakey*, 332 N.W.2d 729, 731-32 (S.D. 1983); *State v. Quinn*, 286 N.W.2d 320, 322 (S.D. 1979) (discussing the specific intent element of theft which is not an element of misdemeanor "joy riding" under SDCL § 22-30A-12). Specific intent crimes "require some intent beyond the intent to do the physical act involved in the crime[;]" they "require that the offender have 'a specific design to cause a certain result.' " *State v. Liaw*, 878 N.W.2d 97, 100 (S.D. 2016) (citation omitted). To be guilty of theft under South Dakota law, one must not only take or exercise unauthorized control over property of another, but must do so with the "intent to deprive that person of the property." *See* SDCL 22-30A-1; *Blakey*, 332 N.W.2d at 732 (concluding that the evidence was sufficient for the jury to find beyond a reasonable doubt that defendant "had the specific intent to commit the offense of theft.").

The Court finds that Deputy Foss lacked probable cause and arguable probable cause to initiate the prosecution of Durham for grand theft in the Cole matter. It is alleged that Deputy Foss had knowledge that Cole signed the authorization to repair contract and that Cole's insurance company had approved the repairs and that he deliberately withheld this information from prosecutors. (Doc. 5, ¶¶ 33, 34). Even if there are questions about whether Cole had revoked Durham's authorization to repair, the Court finds that probable cause for the arrest and prosecution

was still lacking because the facts alleged are insufficient to lead a reasonable person to believe that Durham exercised control over the Cole's vehicle with the specific intent to deprive Cole of his vehicle.

The Court finds that arguable probable cause was also lacking to arrest and prosecute Durham for grand theft because it was not an objectively reasonable mistake to believe that probable cause existed to prosecute Durham for grand theft. *See Borgman v. Kedley*, 646 F.3d 518, 523 (8th Cir. 2011) ("An officer has probable cause to make a warrantless arrest when the totality of circumstances at the time of the arrest 'are sufficient to lead a reasonable person to believe that the defendant has committed or is committing an offense.' "). Here, it is alleged that when Deputy Foss inquired whether Plaintiffs charged storage and estimation fees, Durham responded that they did and that he would not return Cole's vehicle until Cole paid the $495 in storage and estimation fees due. Even if the Court was to presume for purposes of this motion that Plaintiffs did not have a legal right to withhold Cole's vehicle until he paid storage and estimation fees, unlike in other jurisdictions, the "intent to deprive" element of South Dakota's theft statute does not encompass an intent to restore property of another only upon payment of reward or other compensation. *See, e.g. Capson v. Superior Court of State of Ariz., In and For Maricopa County*, 677 P.2d 276, 279 (Ariz. 1984) (citing A.R.S. § 13-1801(2)); *Falcone v. State*, 682 S.W.2d 418, 420 (Ct. App. Tex. 1984) (citing *Tex.Pen.Code Ann. Sec.* § 31.01(3)); *Commonwealth v. Johnson*, Civ. No. 3515 EDA 2017, 2019 WL 6002236, at *7 (Penn. Nov. 14, 2019) (unpublished) (citing 18 Pa.C.S. § 3901); *State v. Allen*, Civ. No. A13-0348, 2013 WL 6152300, at *2 (Nov. 25, 2013) (citing Minn. Stat. § 609.52, subd.2(5)(iii)); *State v. Chambers*, Civ. No. CCA01C01-9505-CC-001, 1996 WL 337340, at *2 (Ct. Crim. App. Tenn. Jun. 20, 1996) (citing Tenn.Code Ann.§ 39-11-106(a)(8); *State v. Lixey*, 471 N.W.2d 444, 541 (Neb. 1991) (citing Neb.Rev.Stat. § 28-509). Accepting as true the factual allegations in the amended complaint, and viewing the allegations in the light most favorable to Plaintiffs as the Court is bound to do at this stage, the Court finds that a reasonable officer in Deputy's Foss's position would not believe that that Durham intended to deprive Cole of his vehicle when he conditioned the return of the vehicle upon receiving payment of $495 in estimation and storage fees. *See Malley v. Briggs*, 475 U.S. 335, 341 (1986) (stating that if officers of reasonable competence could disagree that probable cause was present, qualified immunity should be recognized). Accordingly, Deputy Foss is not entitled to qualified immunity based on the allegations in the amended complaint.

20

While the Court finds that Plaintiffs have alleged facts sufficient to support a claim that Deputy Foss deprived Durham of his clearly established Fourth Amendment right to be free from malicious prosecution, Plaintiffs have not alleged any "injury in fact" resulting from the other named defendants.[5]   Plaintiffs therefore lack standing to bring claims against the other named defendants and their claims against these defendants will be dismissed without prejudice. *See Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 180-81 (2000) (stating that in order to possess standing to bring a federal claim, a plaintiff must show, among other things, that he has suffered an injury in fact that is fairly traceable to the challenged action of the defendant); *see also Clemmons v. Armontrout*, 477 F.3d 962, 967 (8th Cir. 2007) ("Liability under section 1983 requires a causal link to, and direct responsibility for, the deprivation of rights. . . .A plaintiff fails to meet this burden where no evidence is presented that the officials caused the suppression of exculpatory evidence or that the officials participated in the investigation in anything other than a limited manner."). Accordingly,

IT IS HEREBY ORDERED that Defendants' Motion to Dismiss (Doc. 11) is GRANTED IN PART AND DENIED IN PART as follows:

1. GRANTED as to Plaintiffs' official capacity claims;
2. GRANTED as to the malicious prosecution claim alleged against Defendants in their individual capacities based on the Randall incident;
3. DENIED as to the malicious prosecution claim alleged against Defendant Deputy Foss in his individual capacity based on the Cole incident; and
4. GRANTED as to the claims alleged against all other named defendants in their individual capacities.

---

[5] In paragraph 33 of the amended complaint, Plaintiffs allege that "[o]n December 9, 2020, Deputy Foss deliberately withheld from the prosecutors the fact that Cole had signed Dent's authorization to repair contract and that Geico had approved Dr. Dent to make repairs to the vehicle." (Doc. 5, ¶ 34). In paragraph 34, Plaintiffs allege that "[b]ased on the misleading and outright false statements by Deputy Foss, Durham was charged with Grand Theft in the Cole transaction. . . ." (Doc. 5, ¶ 34). Although Plaintiffs allege that Sergeant Davis was also made aware of the authorization to repair contract and that the insurance company had approved the repairs, Plaintiffs do not allege that Sergeant Davis withheld these facts from prosecutors.

Dated this 13th day of September, 2024.

BY THE COURT:

Lawrence L. Piersol
United States District Judge

ATTEST:
MATTHEW W. THELEN, CLERK